JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

19   3657

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Trustees of Teamsters Pension Trust Fund of Philadelphia & Vicinity and Trustees of Teamsters Health & Welfare Trust Fund of Philadelphia & Vicinity

**DEFENDANTS**
FNJ Hauling, LLC

**(b)** County of Residence of First Listed Plaintiff   Camden, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bucks, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE.   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
R. Matthew Pettigrew, Jr., Markowitz & Richman, 123 South Broad Street, Philadelphia, PA 19109, (215) 875-3132

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical Leave Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☒ 791 Employee Retirement Income Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ERISA, 29 U.S.C. Sections 1132 and 1145

Brief description of cause:
Action to compel audit and collect unpaid employee benefit contributions

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ UNKNOWN

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE

DOCKET NUMBER    AUG 12 2019

DATE   August 14, 2019

SIGNATURE OF ATTORNEY OF RECORD   R. Matthew Pettigrew, Jr.

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**IS**                    UNITED STATES DISTRICT COURT          **19      3657**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiffs   2500 McClellan Avenue – Suite 140, Pennsauken, NJ 08109

Address of Defendant   151 Forsythia Court, Quakertown, PA 18951

Place of Accident, Incident or Transaction   Pennsauken, NJ

---

### Related case, if any:

Case Number _____ Judge _____ Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions

1   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐    No XX

2   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐    No XX

3   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐    No XX

4   Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐    No XX

I certify that, to my knowledge, the within case ☐ is / XX is not related to any case now pending or within one year previously terminated action in this court except as noted above

Date   August 7, 2019             /s/ R. Matthew Pettigrew, Jr.             32952
                          Attorney-at-law / Pro Se Plaintiff          Attorney I D No

---

CIVIL. (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. XX All other Federal Question Cases
    (Please specify)   ERISA

B   *Diversity Jurisdiction Cases*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I,   R. Matthew Pettigrew, Jr.   , counsel of record do hereby certify

☐ Pursuant to Local Civil Rule 53 2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs.

XX Relief other than monetary damages is sought

Date   August 7, 2019             /s/ R. Matthew Pettigrew, Jr.             32952
                          Attorney-at-law / Pro Se Plaintiff          Attorney I D No

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

AUG 12 2019



**JS**
United States District Court
Eastern District of Pennsylvania

## Case Management Track Designation Form

Trustees of Teamsters Pension Trust Fund of
Philadelphia & Vicinity ,et al.,
              Plaintiffs

       v.

FNJ Hauling, LLC,
             Defendant

:
:
: Civil Action   **19   3657**
:
:
: No.
:
:
:

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

August 7, 2019
      Date

/s/  R. Matthew Pettigrew, Jr.
R. Matthew Pettigrew, Jr.
Markowitz & Richman
123 South Broad Street – Suite 2020
Philadelphia, PA 19109
215-875-3132
215-790-0668 (fax)
mpettigrew@markowitzandrichman.com

AUG 12 2019

**JS**

LAW OFFICES
## MARKOWITZ & RICHMAN
123 SOUTH BROAD STREET
SUITE 2020
PHILADELPHIA, PENNSYLVANIA 19109

(215) 875-3100
FAX (215) 790-0668
WWW.MARKOWITZANDRICHMAN.COM

RICHARD H MARKOWITZ
(1979 2016)

STEPHEN C RICHMAN
QUINTES D TAGLIOLI
JONATHAN WALTERS ++
THOMAS H KOHN ***
MATTHEW D AREMAN +
R MATTHEW PETTIGREW, JR **
PETER H DEMKOVITZ +
CLAIBORNE S NEWLIN +++

OF COUNSEL
PAULA R MARKOWITZ
RICHARD KIRSCHNER *
M KAY GARTRELL *

* ALSO ADMITTED IN NEW YORK
AND DISTRICT OF COLUMBIA
+ ALSO ADMITTED IN NEW JERSEY
++ ALSO ADMITTED IN DISTRICT OF COLUMBIA
*** ALSO ADMITTED IN DELAWARE AND NEW JERSEY
*** ALSO ADMITTED IN NEW JERSEY AND NEW YORK
+++ ALSO ADMITTED IN VIRGINIA
AND DISTRICT OF COLUMBIA
* ALSO ADMITTED IN DISTRICT OF COLUMBIA
AND NORTH CAROLINA

ALLENTOWN OFFICE
PARKVIEW EAST BUILDING
SECOND FLOOR
121 NORTH CEDAR CREST BOULEVARD
ALLENTOWN PA 18104
(610) 820-9531

NEW JERSEY OFFICE
24 WILKINS AVENUE
HADDONFIELD, NJ 08033
(856) 616 2930

NEW YORK OFFICE
39 BROADWAY
SUITE 1620
NEW YORK, NY 10006
(800) 590-4561

DELAWARE OFFICE
1225 NORTH KING STREET
SUITE 804
WILMINGTON, DE 19801
(302) 656-2308

215-875-3132

August 7, 2019

**Via First-Class Mail**

Ms. Kate Barkman, Clerk
United States District Court
United States Courthouse
601 Market Street – Room 2609
Philadelphia, PA 19106-1797

Re: **Trustees of Teamsters Pension Trust Fund of Philadelphia & Vicinity, et al. v. FNJ Hauling, LLC**

Dear Ms. Barkman:

I have enclosed the following documents in the above-referenced matter: (a) complaint; (b) three exhibits; (c) civil cover sheet; (d) designation form (two copies); (e) case management track designation form; and (f) summons. I have also enclosed a disk that contains the documents in PDF format.

Please file the documents on the court's CM/ECF system. Our check in the amount of $400.00 is enclosed for your filing fee.

Thank you for your assistance.

Very truly yours,

R. Matthew Pettigrew, Jr.

JS

R. Matthew Pettigrew, Jr. (No. 32952)
Stephen C. Richman (No. 15884)
Markowitz & Richman
123 South Broad Street – Suite 2020
Philadelphia, PA 19109
215-875-3132
*Attorneys for Plaintiff*

| | |
|---|---|
| **Trustees of Teamsters Pension Trust Fund of Philadelphia & Vicinity** | **United States District Court** |
| 2500 McClellan Avenue – Suite 140 | **Eastern District of Pennsylvania** |
| Pennsauken, NJ 08109 | |
| *and* | |
| **Trustees of Teamsters Health & Welfare Trust Fund of Philadelphia & Vicinity** | **Civil Action** |
| 2500 McClennan Avenue – Suite 140 | |
| Pennsauken, NJ 08019, | **No.   19   3657** |
| Plaintiffs | |
| v. | |
| **FNJ Hauling, LLC** | |
| 151 Forsythia Court | |
| Quakertown, PA 18951 | **Complaint** |
| Defendant | |

The plaintiffs, the Trustees of the Teamsters Pension Trust Fund of Philadelphia &

Vicinity and the Trustees of the Teamsters Health & Welfare Trust Fund of Philadelphia &

Vicinity, by their attorneys, Markowitz & Richman, hereby file this complaint, and with regard to

the defendant, Macklyfe Contracting, LLC, allege:

1

### Jurisdiction and Venue

1. This action arises under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185, to recover unpaid employee benefit contributions.

2. This Court has jurisdiction over this matter pursuant to Sections 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), Section 301 of the LMRA, and 28 U.S.C. § 1331.

3. Venue is proper pursuant to Section § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b).

### Parties

4. The plaintiffs are the Trustees of the Teamsters Pension Trust Fund of Philadelphia & Vicinity ("Pension Fund") and the Trustees of the Teamsters Health & Welfare Trust Fund of Philadelphia & Vicinity ("Health Fund"). (The Pension Fund and the Health Fund are at times referred to herein collectively as the "Funds.")

5. The Health Fund and the Pension Fund are multi-employer benefit funds within the meaning of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37). The Funds receive and administer contributions from various contractors who are obligated to make contributions thereto by virtue of their having agreed to be bound by collective bargaining agreements with various local unions

2

affiliated with the International Brotherhood of Teamsters, including Local 107. The Funds'
office is located at 2500 McClennan Avenue, Suite 140, Pennsauken, New Jersey, 08109.

      6. The defendant, FNJ Hauling, LLC ("FNJ") is a Pennsylvania corporation with an
address of 151 Forsythia Court, Quakertown, Pennsylvania, 18951.

### Background

      7. FNJ's employees who are represented by Local 107 are participants in and
beneficiaries of the Funds.

      8. FNJ is a party to a collective bargaining agreement ("Agreement") with Local 107 and
is bound by the terms of the Agreement. (The relevant portions of the Agreement are included
with this Complaint as Exhibit A.)

      9. Articles VII and VIII of the Agreement requires FNJ to make timely contributions to
the Funds for each hour worked by each employee.

      10. FNJ is a party to the Health Fund agreement and declaration of trust . (The Health
Fund agreement and declaration of trust is included with this Complaint as Exhibit B.)

      11. Section 9(e) of the Health Fund agreement and declaration of trust authorizes the
Trustees to review and audit FNJ's records relating to its employees and business operations.

      12. FNJ is a party to the Pension Fund agreement and declaration of trust. (The Pension
Fund agreement and declaration of trust is included with this Complaint as Exhibit C.)

      13. Article IV(e) of the Pension Fund agreement and declaration of trust authorizes the

Trustees to examine and audit any of FNJ's records deemed necessary by the Trustees for a complete audit.

## Count One

### Breach of Contract

14. Paragraphs 1 through 13 of this complaint are re-alleged as if fully set forth herein.

15. At all times relevant to this lawsuit, FNJ employed individuals whose wages, hours, and terms and conditions of employment were governed by the Agreement.

16. In accordance with the Agreement, FNJ is required to make monthly contributions to the Health Fund and to the Pension Fund for each hour worked by each employee.

17. In accordance with the trust agreements, FNJ is required to provide the Funds' auditors with access to its books and records.

18. Despite numerous requests, FNJ has refused to provide requested documents, including payroll and other records, to the Funds' auditors.

19. Due to FNJ's refusal to cooperate with the Funds' auditors, it is impossible to determine whether or not FNJ has fully complied with its contribution obligations.

20. FNJ's failure to submit the requested documents and to otherwise cooperate with the Funds' auditors constitutes a breach of the Agreement and the trust agreements.

4

## Count Two

### Violation of ERISA

21. Paragraphs 1 through 20 of this Complaint are re-alleged as if fully set forth herein.

22. Section 515 of ERISA, 29 U.S.C. § 1145, requires that every employer, who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collective bargaining agreement, shall do so in accordance with such plan or agreement.

23. Due to FNJ's refusal to cooperate with the Funds' auditors, it is impossible to determine whether or not FNJ has fully complied with its contribution obligations.

24. Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2), provides that in any action instituted for on or behalf of a multi-employer plan to enforce the payment of delinquent contributions, the Court shall, if judgment is entered in favor of the plan, award the plan: (a) the unpaid contributions, plus (b) interest on the unpaid contributions, plus (c) an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages provided for under the plan in amount not in excess of 20 percent (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court under subparagraph (a), plus (d) reasonable attorney's fees and costs of the action, plus (e) such other legal or equitable relief as the court deems appropriate.

25. FNJ's failure to submit the requested documents and to otherwise cooperate with the Funds' auditors constitutes a violation of ERISA.

WHEREFORE, the plaintiffs pray that this Honorable Court grant the following relief:

(a) an Order directing FNJ to provide the Funds' auditors with access to its books and records for the purpose of determining the total amount of contributions owed by FNJ;

(b) judgment in favor of the plaintiffs in the full amount determined by the auditors to be owed to the Funds, plus the amount of any unpaid contributions that arise or are discovered subsequent to the commencement of this lawsuit;

(c) interest on the unpaid contributions;

(d) liquidated damages as provided by ERISA and the Agreement;

(e) the reasonable litigation costs, auditors' fees, and attorneys' fees incurred by the plaintiffs in connection with this action; and

(f) such other legal and equitable relief this court deems just and proper and/or to which the plaintiffs are otherwise entitled.

Respectfully submitted,

/s/ R. Matthew Pettigrew, Jr.

_____
August 7, 2019
Date

R. Matthew Pettigrew, Jr.
Stephen C. Richman
Markowitz & Richman
123 South Broad Street – Suite 2020
Philadelphia, PA 19109
215-875-3132
*Attorneys for Plaintiffs*

6

**EXHIBIT A**

03105-001

### AGREEMENET BETWEEN TEAMSTERS LOCAL 107

### AND

### FNJ HAULING

### FOR THE PERIOD OF MAY 1, 2016 TO APIRL 30TH, 2019

*ARTICLE 1. SCOPE OF AGREEMENT*

*Section 1.* The terms of this Agreement shall apply to the transportation upon public highways of stone, gravel, sand, waylite, cinders, slag, dirt by the ton, and plant mix asphalt paving materials and millings directly or by hauling subcontractors.

*Section 2.* Drivers on heavy and highway and building construction projects are to be covered by the rates and conditions as contained in current agreements between Local 107 and the Contractor's Association of Eastern Pennsylvania and the Pennsylvania Excavating Contractors Association Agreement, commonly known as a Five County Agreement, except as modified as follows.

> *On any job bid in the counties of Philadelphia, Bucks, Chester, Delaware and Montgomery during the term of this Agreement, where the Employer believes that there will be competition by contractors not bound by the terms of this Five County Agreement, the Employer may invoke the terms and conditions of this Agreement provided notice is given to the Local Union prior to implementations.*

Health & Welfare –For the years 2016, 2017, and 2018, the company will pay the Funds published rate with a maximum of a 10% cap for each year.

Pension – There will be a 5% Maintenance of Benefits increase into the Pension in years 2016, 2017 and 2018 which is mandatory by the fund.

*HAULING RATE + HEALTH/WELFARE/PENSION* – Health and Welfare and Pension will be capped at 40 hours per week.

|  | WAGES | PENSION | H&W |
|---|---|---|---|
| YR1 | $25 00 |  |  |
| Wages - | 2nd year $.50¢ |  |  |
|  | 3rd year $.50¢ |  |  |

FOR THE EMPLOYER

_____
Signature

_____
Print Name

_____
Title

FOR THE UNION

_____
Signature

_____
Print Name

_____
Title

TEAMSTERS PENSION

JUL 2 1 2016

RECEIVED—WD LIABILITY

Agreement
for

All Construction

between

The Contractors Association
of Eastern Pennsylvania

and

Teamster Local Union #312
Truck Drivers, Chauffeurs
and Helpers Local Union #384
General Teamsters,
Chauffeurs, Helpers &
Yardmen, Local Union #107

all affiliated with the

International Brotherhood

of Teamsters, Chauffeurs,

Warehousemen and Helpers

of America

Five County Agreement

Bucks, Chester, Delaware,

Montgomery and Philadelphia Counties

Effective: May 1, 2017 to April 30, 2022

210

Table of Contents

Page

**ARTICLE I - SCOPE OF AGREEMENT**..........1
   Section 1.1 - Operations Covered .......1
   Section 1.2 - Liability ...............2
   Section 1.3 - Membership
              Discontinuance ..........2

**ARTICLE II - UNION SECURITY**.............2
   Section 2.1 - Recognition .............2
   Section 2.2 - Union Security ..........2
              A. Union Membership
                 Required ........... 2
              B. New Employees ....... 3
              C. Employer ........... 3
              D. Maximum Lawful
                 Security ........... 4
              E. Legality ............. 4
   Section 2.3 - Probationary Employees ...4
   Section 2.4 - Check-off ................5
   Section 2.5 - Political Action ........5
   Section 2.6 - Physical Examinations ....5

**ARTICLE III - STEWARDS**..................6
   Section 3.1 - Appointment and Duties ...6
   Section 3.2 - Lay-Off ..................7
   Section 3.3 - Steward Rate of Pay ......7
   Section 3.4 - Steward per Shift ........8

**ARTICLE IV - ABSENCE**....................8
   Section 4.1 - Time Off for Union
              Activities ..............8

**ARTICLE V - SENIORITY**...................8
   Section 5.1 - Rules ...................8
   Section 5.2 - Break in Seniority .......9
   Section 5.3 - Lay-off/Call Back ........9
   Section 5.4 - Purchase of Equipment ...10

Table of Contents

Page

ARTICLE VI - GRIEVANCE PROCEDURE &
            ARBITRATION.................10
  Section 6.1 - Disciplinary Action .....10
  Section 6.2 - Notification of
                Grievance ..............10
  Section 6.3 - Disposition of Grievance
                by Employer ............11
  Section 6.4 - Joint Committee &
                Procedures .............11
  Section 6.5 - Establishment of Joint
                Committee ..............12
  Section 6.6 - Right to Investigate ....12
  Section 6.7 - Arbitration Procedures ..13
  Section 6.8 - Fringe Benefit Payment
                Delinquencies
                Exception ..............14
  Section 6.9 - Riders and Supplements ..15

ARTICLE VII - HEALTH, WELFARE &
             INSURANCE FUND............15

ARTICLE VIII - PENSION PLAN.............15

ARTICLE IX - ELIGIBILITY................17

ARTICLE X - SAVINGS & SEPARABILITY......17

ARTICLE XI - HOURS OF WORK..............18

ARTICLE XII - STARTING TIME.............19

ARTICLE XIII - HOLIDAYS-VACATIONS.......20
  Section 13.1 - Holidays ..............20
  Section 13.2 - Vacations .............21
  Section 13.3 - Family Medical
                 Leave Act ............22

Page

ARTICLE XIV - RATES OF PAY..............23
  Section 14.1 - Heavy-Highway .........23
  Section 14.2 - Building Rates ........25
  Section 14.3 - National Maintenance
                 Agreement Rate ........27
  Section 14.4 - Higher Rate For Day ...27
  Section 14.5 - Toxic/Hazardous
                 WasteRemoval ..........27

ARTICLE XV - OVERTIME...................28

ARTICLE XVI - OTHER DUTIES..............29

ARTICLE XVII - NO STRIKES & NO LOCKOUTS.29

ARTICLE XVIII - DISCHARGE OR SUSPENSION.29
  Section 18.1 - Discharge .............29
  Section 18.2 - Warning Notice ........30
  Section 18.3 - Payment of Wages ......30
  Section 18.4 - Appeal of Discharge or
                 Suspension ...........30
  Section 18.5 - Reinstatement .........31

ARTICLE XIX - PICKET LINES..............31
  Section 19.1 - Picket Lines ..........31
  Section 19.2 - Struck Goods ..........31

ARTICLE XX - SUBCONTRACTING.............32

ARTICLE XXI - NON-DISCRIMINATION IN
             EMPLOYMENT................33

ARTICLE XXII - FAMILY DEATH.............33

ARTICLE XXIII - REVOCATION OF LICENSE -
               EMPLOYEE BAIL...........34

ARTICLE XXIV - PROTECTION OF CONDITIONS.35

Table of Contents

Page

ARTICLE XXV - JURISDICTIONAL DISPUTES...37

ARTICLE XXVI - LEAVE OF ABSENCE........38

ARTICLE XXVII - EQUIPMENT..............39

ARTICLE XXVIII - POSTING NOTICE........39

ARTICLE XXIX - INSPECTION PRIVILEGES....39

ARTICLE XXX - IDENTIFICATION FEES.......40

ARTICLE XXXI - MULTI-EMPLOYER..........40

ARTICLE XXXII - PASSENGERS.............40

ARTICLE XXXIII - CONFLICT OF INTEREST...40

ARTICLE XXXIV - FUTURE BIDDING.........41

ARTICLE XXXV - DRUG AND ALCOHOL ABUSE
              PROGRAM...............42-61

ARTICLE XXXVI - TERMINATION OF
               AGREEMENT..............61

EMPLOYER'S ACCEPTANCE AGREEMENT
(NON CAEP MEMBERS)......................63

EXHIBIT "A"............................64

EXHIBIT "B"............................65

---

## FIVE-COUNTY AGREEMENT

### Bucks, Chester, Delaware, Montgomery and Philadelphia Counties

AGREEMENT effective as of the 1st day of May, 2017 by and between THE CONTRACTORS ASSOCIATION OF EASTERN PENNSYLVANIA, for and on behalf of the corporations, partnerships and individuals listed on Exhibit A attached hereto, (hereinafter referred to as "EMPLOYER"), parties of the first part - and - TEAMSTERS LOCAL UNION #312, TRUCK DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION #384, GENERAL TEAMSTERS, CHAUFFEURS, HELPERS & YARDMEN, LOCAL UNION #107, all affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA (hereinafter referred to as the "UNION"), parties of the second part.

**NOW THIS AGREEMENT WITNESSETH THAT:**
**The parties hereto agree as follows:**

## ARTICLE I
## Scope of Agreement

**Section 1.1 Operations Covered.** This Agreement shall cover the employees within the jurisdiction of the UNION who are employed by any Employer, which includes Employers noted on Exhibit A (Roster), and any other employer who may become a member of THE CONTRACTORS ASSOCIATION OF EASTERN PENNSYLVANIA after the date of this Agreement.

This Agreement shall be binding upon each Employer, his or its successors, administrators, executors and assigns.



fails to appear at the hearing or to present evidence.

The arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision on any grievance coming before him, but shall not have the authority to amend or modify this Agreement or establish new terms and conditions under this Agreement. The cost of the arbitration shall be shared equally by the parties. The decision of the arbitrator shall be final and binding on the parties and employees involved. In the event that the losing party fails to abide by the arbitrator's decision, or that either party refuses to submit to his jurisdiction, the other party shall have the right to immediately take all legal or economic recourse. It is the intention of the parties that the time limits set forth in this Article shall be strictly enforced.

**Section 6.8** Notwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent at the end of a period in the payment of his contribution of the Health, Welfare, and Insurance Fund, or Pension Fund, created under this Agreement, in accordance with rules and regulations of the Trustees of such Funds, after the proper official of the Local Union has given seventy-two (72) hours' notice to the Employer of such delinquency in Health, Welfare and Insurance Fund, and/or Pension Fund payments, the employees or their representatives shall have the right to take such action as may be necessary



until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

**Section 6.9** Riders or supplements to this Agreement may be negotiated by any of the parties hereto if they are approved by unanimous action of the Joint Committee.

## ARTICLE VII
### Health, Welfare & Insurance Fund

**Section 7.1** For the period beginning May 1, 2017 to April 30, 2018, each Employer shall pay weekly into the Teamsters' Health, Welfare and Insurance Fund, the sum of Nine Dollars and Nine and Half Cents ($9.0950) per hour for each hour for which payment has been made to each chauffeur or helper employed by such Employer, including overtime hours.

For the periods beginning May 1, 2018 to April 30, 2019 and beginning May 1, 2019 to April 30, 2020, contribution to be at the funds published rate with a maximum cap increase of ten percent (10%).

*For years beginning 5/1/20 and 5/1/21, wage increases shall be not less than $0.35 per hour each year after Health & Welfare and Pension amounts are determined by the Teamsters Health & Welfare and Pension Funds.

## ARTICLE VIII



A. The Employer shall post a twenty-five thousand dollar ($25,000.00) bond to

insure the payment of fringe benefits provided for in Articles VII and VIII above.

## Pension Plan

**Section 8.1** For the period beginning May 1, 2017 to April 30, 2018, each Employer shall pay weekly into the Teamsters' Pension Plan the sum of Eight Dollars and Eighty-six and Half Cents ($8.8650) per hour for each hour for which payment has been made to each chauffeur or helper employed by such Employer, including overtime hours.

Minimum maintenance of benefit of five percent (5%) increase to pension per all hours worked shall be changed to reflect the new contract years two and three (May 1, 2018 to April 30, 2019 and May 1, 2019 to April 30, 2020).

*For years beginning 5/1/20 and 5/1/21, wage increases shall be not less than $0.35 per hour each year after Health & Welfare and Pension amounts are determined by the Teamsters Health & Welfare and Pension Funds.

**Section 8.2** The Employer shall have an obligation to make the contributions required to be made by Article VII and VIII hereof, and shall be individually responsible to the respective Funds for such payments. **Payment of the funds due are due by the 28th of the month following the month earned.** The staff of the Contractors Association of Eastern Pennsylvania shall, at the request of the UNION, exert its best efforts so that such payments will be made when due and that

there shall not be any delinquencies in the making thereof.

## ARTICLE IX
## Eligibility

**Section 9.1** In addition to the payments made by the Employer into the Teamsters' Health,Welfare and Insurance Fund under Section 7.1,each Employer will make payment into the said fund on behalf of any employee who does not qualify for benefits because of lack of sufficient contributions, in the event such employee makes application and is otherwise eligible for such benefits.

This additional payment will be made only for those employees who have been on the Employer's seniority list for at lease one (1)calendar year (January 1 to December 31 in the same year) and have worked at least 100 days in that calendar year. The total number of additional days' contributions shall not exceed thirty (30) in any calendar year for any employee.

## ARTICLE X
## Savings and Separability

**Section 10.1** The parties to this Agreement believe it complies with the existing law. Accordingly, it is agreed that nothing contained in this Agreement shall require EMPLOYER or UNION to do anything which violates the law.

**Section 10.2** The parties agree that all of the clauses of this Agreement shall be severable. Any clause which may be prohibited by, invalid under, or in contravention of

16          17

**EXHIBIT B**



# AGREEMENT AND
# DECLARATION OF TRUST

of the

# TEAMSTERS HEALTH
# AND WELFARE FUND
*OF PHILADELPHIA AND VICINITY*

### AMENDED AND RESTATED
### AS OF JULY 1, 2000

**EFFECTIVE JULY 1, 2000**, the Declaration of Trust of the TEAMSTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY, (hereinafter "Trust Agreement"), first adopted and established on December 13, 1951, and as amended since that date, is hereby Amended and Restated.

## WITNESSETH:

**WHEREAS**, on or about the 9th day of October 1950, agreements were entered into between HIGHWAY TRUCK DRIVERS AND HELPERS UNION, LOCAL 107 and MOTOR TRANSPORT LABOR RELATIONS, INC., now known as Transport Employers Association (hereinafter called "TEA"); GENERAL TEAMSTERS, CHAUFFEURS, HELPERS AND YARDMEN, LOCAL UNION NO. 470 and TEA; and TEAMSTERS UNION, LOCAL NO. 929 and TEA, respectively, intending to govern the hours of work, wages and working conditions of members of UNION employed by EMPLOYERS or by any other employer who may become a member of the TEA after the date of said agreements, and a copy of whose approved application for membership in TEA has been filed with the appropriate union by TEA; and

**WHEREAS**, by agreement originally made on the 13th day of December, 1951, amended from time to time and now restated as of July 1, 2000, by and between TEA, acting for and on behalf of the corporations, partnerships and individuals listed on "Exhibit A" attached to the Master Agreement dated October 9, 1950 (hereinafter called "EMPLOYERS"), party of the first part, and HIGHWAY TRUCK DRIVERS AND HELPERS UNION, LOCAL NO. 107; GENERAL TEAMSTERS, CHAUFFEURS, HELPERS AND YARDMEN, LOCAL UNION NO. 470; TRUCK DRIVERS AND HELPERS UNION, LOCAL NO. 676; TEAMSTERS UNION, LOCAL NO. 929; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, LOCAL 331; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 384; all of whom are affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO (hereinafter collectively called "UNION"), party of the second part, originally created a trust fund known as the TEAMSTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY (hereinafter "Trust Fund"); and

**WHEREAS**, the collective bargaining agreements aforesaid contain a clause relating to a Welfare Plan; and

**WHEREAS**, the other UNIONS to this Agreement have existing collective bargaining agreements with employers which contain a clause relating to a Welfare Plan; and

**WHEREAS**, the parties hereto have established and desire to continue a Welfare Plan within the meaning of the agreements, as aforesaid, subject to whatever

conditions may be necessary to conform with the requirements of any and all applicable laws and legal limitations; and

WHEREAS, the parties hereto agree that under the circumstances and in the manner herein provided, any employer having a collective bargaining agreement with any of the UNIONS party to this Agreement may, by agreement in writing, become a party to and be bound by the terms of this Agreement, such employer thereafter to be included in the term "EMPLOYERS" whenever used in this Agreement; and

WHEREAS, the parties to the original Agreement and Declaration of Trust and the Trustees of the Trust Fund do hereby wish to further amend and restate the Trust Agreement.

NOW THEREFORE, in consideration of the premises and of thereof mutual covenants, the parties hereto agree as follows:

1. There is hereby established a trust fund into which shall be paid on and after January 1, 1952 any and all contributions payable by EMPLOYERS or any other eligible employer who has agreed, in writing, to be bound by the terms of this Agreement. The trust fund shall be known as the "Teamsters Health and Welfare Fund of Philadelphia and Vicinity." Pending investment, contributions to this Trust Fund shall be deposited with such bank, trust company or other institution, hereinafter referred to as institution, as the Trustees may designate.   Such contributions are hereafter to be made by each OPERATOR or other employer by check payable to the order of the Trust Fund.  No endorsement of any such check and no payment from the Trust Fund shall be made except upon the signature of at least two Trustees, one of whom shall have been appointed by TEA and one of whom shall have been appointed by the UNION. Any and all transactions involving the principal and income in the Trust Fund and all questions of policy in the management of the Trust Fund shall be subject to the unanimous approval of the Trustees.

2. The Trustees shall consist of one or more persons designated by the TEA and representing EMPLOYERS and other employers governed by this Agreement, and an equal number of persons designated by the UNION and representing the employes. Unless and until the parties otherwise agree, there shall be three Trustees representing the TEA and other employers governed by this Agreement, and three Trustees representing the UNION. The UNION Trustees shall be appointed by the respective UNIONS party to this Agreement, and a written certification by the Secretary/Treasurer of the HIGHWAY TRUCK DRIVERS AND HELPERS UNION, LOCAL NO. 107, of the appointment of such Trustees shall be the sole evidence thereof.   The Trustees representing the TEA and the other employers governed by this Agreement shall be appointed by the President, the Vice-President and the Treasurer of Transport Employers Association, and a written certification by the Secretary of Transport Employers Association shall be satisfactory evidence of such appointment. Each Trustee shall serve at the pleasure of the respective groups by which he is elected or appointed, but neither group shall have the right to remove a Trustee without simultaneously designating a

-3-

successor. The Trustees shall give bond at the expense of the Trust Fund, for the faithful performance of their duties, and as a condition precedent to entering upon such duties. The bond herein before referred to shall be established and adjusted in the amount and in the manner prescribed by applicable law; provided, however, that the amount of the bond shall at no time be less than $100,000.

3. Both the principal and the income of the Trust Fund shall be held in trust for the benefit of (1) the employes of the EMPLOYERS; and (2) other employes who are members of the UNION; and (3) any full-time, salaried officer, business agent or full-time employe of the UNION or a full-time employe of either the Teamsters Pension Trust Fund of Philadelphia and Vicinity or the Teamsters Health and Welfare Fund of Philadelphia and Vicinity (all of whom are hereinafter collectively referred to as "employes") for the purpose of providing for them medical care and welfare benefits, whether in the form of group life insurance, hospitalization or health and accident benefits or a combination of these, or any other form of Welfare Plan, including one which is self-administered and self-insured, agreed upon by the Trustees hereto in order to give effect to the agreement of the parties herein before referred to.

4. As promptly as possible after the effective date of this Agreement, the Trustees of the Trust Fund shall consider and decide upon a program for the payment of benefits from the Trust Fund, subject to the limitations provided above. Such program of benefits shall be set forth in detail in a written instrument which shall be considered a supplement to this Agreement and which the parties hereby authorize their respective Trustees to execute on their behalf. No payments for benefits of any kind shall be made from the Trust Fund, except as specifically provided in the program, detailed in such supplementary agreement. Such program may be altered or modified from time to time by unanimous action of the Trustees, subject to the foregoing limitations and provided that it is set forth and executed as a further supplementary agreement.

5. In the event that a dispute shall arise between the Trustees in the course of the administration of the Trust Fund, the Trustees shall endeavor to agree upon a impartial umpire to decide such dispute, and in the event of their failure to agree upon such umpire within thirty (30) days from the date of such dispute, then the designation shall be made, upon petition of any one or more of the Trustees, by the United States District Court for the Eastern District of Pennsylvania. In considering and deciding any such dispute, the impartial umpire shall be bound in any and all respects by the provisions of this Agreement and of any supplementary agreement or agreements hereafter entered into as provided above. The expenses of any such umpire shall be payable out of the Trust Fund.

6. One or more competent, impartial public accountants shall be designated by the Trustees to make an audit of the Trust Fund and of all transactions relating thereto at the end of each calendar year, at the expense of the Trust Fund. The statement of the accountant or accountants making such audit shall be available for inspection by any interested persons at the principal office of the Trust Fund.

-4-

7.   The Trustees shall be entitled to receive out of the Trust Fund such reasonable compensation for their services as may be agreed upon among them, provided, however, that such compensation shall be in an equal amount for each similarly situated Trustee and shall first have been approved by the parties designating the Trustees.

8.   Unless prohibited by applicable law, the Trustees shall not be personally liable for any act of omission or commission in the administration of the Trust Fund except in the event of willful negligence or fraud, and no Trustee shall be personally liable for the dereliction of any other Trustee, except in case of participation therein.

9.   The Trustees shall have the following powers in addition to those otherwise provided herein.

(a)   To accept, hold, invest in, and retain:

(1)   Obligations of the United States or the United States Treasury or those for the payment of which the faith and credit of the United States is pledged, including obligations of the District of Columbia.

(2)   Obligations of the Commonwealth of Pennsylvania or those for the payment of which the faith and credit of the Commonwealth is pledged.

(3)   Obligations of any state of the United States or any county, city, borough, town, township, school district, institution district or other political subdivision, having the power to levy taxes, of any such state; provided that the faith and credit of such state or political subdivision thereof, is pledged for the payment of said obligations; and provided further, that at the date of the investment in such obligations, such state or political subdivision is not in default in the payment of any part of the principal of interest payment owing by it upon any part of its funded indebtedness.

(4)   To further invest and reinvest the principal and income of the Trust, and to keep the same invested without distinction between principal and income; provided, however, that in addition to the foregoing, investments and reinvestments may be made only in accordance with applicable law, if any, and may retain an investment agent or advisor, whether it be a bank or trust company or a corporation or an individual, to counsel and advise the Trustees in all matters relating to investments and reinvestments.

-5-

(b)   To hold cash uninvested, without liability on the Trustees to pay any interest thereon, as a part of the principal of the trust, in such amounts and for such periods of time as they in their sole discretion deem desirable.

(c)   To deposit any monies included in, or derived from the Trust Estate, in any bank, bank and trust company, or savings bank, to entrust to any bank, bank and trust company, savings bank or safe deposit company for safekeeping, any of the funds, stock or share certificates, bonds or other securities or obligations any and all documents and papers comprised in, or relating to the Trust Estate, provided, however, that the amount of money on deposit in any bank, bank and trust company, or savings bank shall be determined by the Trustees and any funds not necessary for the current obligations of the Trustees may be invested as herein set forth.

(d)   To borrow money, with or without security, on such terms as the Trustees, in their uncontrolled discretion may deem desirable, and to issue notes, bonds or other obligations thereof that may mature at a time beyond the possible termination of the Trust or at any earlier time and to enter into and make any indentures of trust or other agreements, covenants, or arrangements for the benefit or security of such obligations.

(e)   To collect, sue for, receive and receipt for all sums of money coming due as part of the Trust Estate, to review and audit, on demand, all wage and other records relating to the EMPLOYER's employes or business operations, to consent to the extension of the time for payment or to the renewal of any bonds or other securities or obligations belonging to the Trust Estate, and to prosecute, defend, compound, compromise, abandon or adjust, by arbitration or otherwise any actions, suits, proceedings, disputes or claims demands and things relating to the Trust Estate.

(f)   To purchase from time to time from the company, companies, associations, individual or individuals of their choice, such contract or contracts as they, in their discretion, deem advisable to provide for life, accident and health, hospitalization, medical, surgical or any combination of types or forms of insurance, service, or protection for the employes; or to establish a program through a self-insured and self-administered plan, provided that such program is detailed in a written instrument as herein referred to.  In the event that a self-insured program is adopted, provisions shall be made for the extent of benefits, the method of administration, eligibility requirements, amount of reserves, bonding of employes, provisions for the relationship between the program and state and federal provisions for similar or related benefits, such statistical data as may be material for the interest of the program, including but not limited to the number, amount and type of benefits paid, duration of disability and the financial status of the Fund, the income and distribution thereof for the

-6-

purpose of maintaining and utilizing such Fund for the appropriate purpose thereof.

(g)   To make, adopt, amend or repeal bylaws, rules and regulations not inconsistent with the terms of this Declaration of Trust as they may deem necessary or desirable for the conduct of their business and the government of themselves, their officers, agents, and other representatives.

(h)   To the extent and in the manner prescribed by applicable law, to determine, from time to time, to what extent and at what times and places, and under what conditions and regulations, the acts and books of the Trustees or any of them shall be open for inspection, and no EMPLOYER or employe represented by the UNION shall have any right to inspect any books or documents of the Trustees except to the extent and in the manner prescribed by applicable law and in accordance with such conditions and regulations, if any, as may be prescribed at any time or from time to time by the Trustees acting in a manner not prohibited by applicable law, to issue such financial statements as are proper and to determine at what time such statements shall be issued and in the method of distribution thereof.

(i)   To accept, acquire, purchase and invest in real estate, and at their discretion to hold, retain, lease, sublease, subdivide, alter and improve the same, as well as mortgage, option, exchange, grant, bargain, sell and convey any such real estate at either public or private sale, including real estate heretofore acquired, upon such terms and conditions as the Trustees may deem appropriate and advisable with full power to make, execute and deliver any and all such instruments as may be necessary, requisite and proper to effectuate any exercise of the foregoing powers.

(j)   To perform and do all such further acts and things as may be properly incidental to the exercise of the foregoing powers, or any agreement, to the same extent to which such further acts and things might be performed and done by a corporation lawfully organized and existing for the purpose and with the powers set forth in this Declaration.

10.   The regular meetings of the Trustees shall be held at such places and at such times as the Trustees, by vote, from time to time may determine; and if so determined, no notice thereof need be given.

11.   Such meetings of the Trustees may be held at any time and at any place when called by two or more Trustees.  Notice of such special meeting shall be given to the Trustee designated as Secretary of the Trustees, or by the person or persons by whom such meeting is called, by giving to each of the Trustees five (5) days' notice of such meeting, sent by registered mail, postage prepaid, to the Trustees' usual address.  It shall not be necessary to give notice of any such meeting, or who, either before or after the meeting waives such notice either orally or in writing.

-7-

12. That fifty percent (50%) of the Trustees present at any meeting shall constitute a quorum for the transaction of any business, provided that one Trustee from each group shall be represented, but less than a quorum may adjourn any meeting from time to time, and such meeting may be held as adjourned without further notice.

13. When a quorum is present at any meeting, a majority of the Trustees present and voting shall decide any questions brought before such meeting, and the action of a quorum of the Trustees as defined above shall be valid and binding as the action of the Trustees, except as provided in paragraph 1 above. The Trustees may, however, act unanimously without a meeting.

14. Any Trustee may, by power of attorney or other written authority, empower the other Trustee(s) from his group to act on his behalf, and use his name for execution or signature of any documents, for the purpose of these presents and the Trust hereby created, but without being responsible for or liable for any loss in connection therewith.

15. Neither the Trustees nor the individuals, partnerships, corporations and associations who or which are parties to this Agreement shall be responsible jointly or severally for the adequacy of the Trust Estate to meet and discharge any and all payments and liabilities under this Indenture. All persons dealing with the Trustees are released from inquiry into the decision and authority of the Trustees to act and from responsibility for the application of any monies, securities or other property delivered to the Trustees.

16. The Trustees shall not be liable for any loss or damages or depreciation which may result in connection with the execution of their duties or the exercise of their discretion hereunder except when due to willful misconduct or unless such loss, damage or depreciation be occasioned by willful violation by the Trustees of any express provision hereunder, and then such liability shall be charged against only the Trustees who have individually committed such misconduct or violation. The Trustees shall not be liable for any loss, damage or depreciation occasioned or caused by any act of negligence on their part or on the part of any employe, agent or servant of the Trust Fund.

17. That the Trustees shall jointly have custody of all monies and other property belonging to the Trust Estate and shall deposit and invest the same as aforesaid and shall disburse the same in the discharge of obligations incurred by the Trustees for the purposes authorized by the Trustees and for no other reason, by checks drawn by them against any deposit account or accounts and signed on behalf of the Trustees in such manner as they may designate. The Trustees shall, in addition, consider as assets of the Trust Estate contributions owing from any Employer required to make payment to the Fund. The Trustees shall, in addition, keep accurate books of account of their financial transactions. The Trustees shall have the authority to enter into an agreement with any reputable institution for the purposes of administering the Welfare Funds and to designate the type of administrative services and duties to be performed by the said institution, and to arrange for such payment for these services as may be agreed upon by the Trustees.

18.   That in this Declaration of Trust nothing shall be deemed or construed to constitute the Trustees, the members of the UNION, the EMPLOYERS, or other employers or any combination of them, paying into the Trust Fund as aforesaid, partners; and it is hereby expressly declared that a trust and not a partnership is hereby created by this Declaration of Trust.  It shall be the duty of the Trustees and each of them and of every officer or agent elected or appointed by them to include in every written agreement entered into by them, or any of them as herein provided, a statement of the immunity provided by this Declaration for the Trustees, officers, agents and other representatives of this Trust Fund as individuals; and neither the Trustees nor any officer, agent or representative appointed or elected by them shall have any power or authority to enter into any agreement or incur any obligation as herein provided which shall in any way bind any of the Trustees individually or the UNION or the individual EMPLOYERS or other employers, but their power shall be limited to obligations and agreements binding upon the Trust Estate.

19.   The death of any Trustee shall not operate to terminate the Trust Fund nor shall the legal representatives of such Trustee be entitled to any accounting or to take any action in the courts or otherwise, but the appointment of such Trustee shall be deemed purely personal and not a right that can descend to heirs at law or legal representatives.

20.   This Agreement may be amended at any time by joint agreement of TEA and the UNIONS which were parties to the original Agreement and Declaration of Trust establishing the Trust Fund.   In addition, the provisions of this Agreement may be amended by an instrument in writing executed by the Trustees; provided, however, that no amendment shall divert any of the assets of the Trust Fund from the purposes of the Trust Fund and further provided that no amendment shall be made as a result of which there would not be an equal number of Trustees appointed by UNION and TEA.

21.   The term "UNION" shall, in addition to the local unions above referred to, also include such other unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America or otherwise authorized by law to represent employes in collective bargaining matters which unions may hereafter become parties to this Trust Fund:

      i)    by unanimous action of the Trustees, and

      ii)   upon compliance with such terms and conditions as may be imposed by the Trustees at the time of their unanimous action, and

      iii)  upon securing any necessary ruling or approval by any governmental agency which may be required to preserve the qualified and tax exempt status of the Trust Fund or otherwise comply with law.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their respective names, the day and year first above mentioned.

**TEAMSTERS HEALTH AND WELFARE FUND
OF PHILADELPHIA AND VICINITY**

| | |
|---|---|
| /s/ Arnold S. Rosenthal | /s/ Paul Cardullo |
| ARNOLD S. ROSENTHAL, TRUSTEE | PAUL CARDULLO, TRUSTEE |
| /s/ Kenneth F. Leedy | /s/ Thomas Hummel |
| KENNETH F. LEEDY, TRUSTEE | THOMAS HUMMEL, TRUSTEE |
| /s/ Bob Schaeffer, Jr. | /s/ Frank Gillen |
| BOB SCHAEFFER, JR. | FRANK GILLEN, TRUSTEE |

The undersigned Employer, having entered into a collective bargaining agreement with Local Union No. _____, which provides, among other things, for contributions to the Teamsters Health and Welfare Fund of Philadelphia and Vicinity, agrees to be bound by the foregoing agreement and Declaration of Trust and any amendments thereto and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are selected as employer Trustees, together with their successors, selected in the manner provided in the within agreement.

Dated:                                    _____

                                          by: _____

                                          For Terminal or Terminals Located:


                                          _____


                                          _____


                                          _____

**EXHIBIT C**



**AMENDED AND RESTATED**

# AGREEMENT AND DECLARATION OF TRUST

### of the

# TEAMSTERS PENSION TRUST FUND
## *OF PHILADELPHIA AND VICINITY*

**July 1, 2000**

THE TRUSTEES OF THE TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY, pursuant to ARTICLE VIII, SECTION 1 of the AGREEMENT AND DECLARATION OF TRUST, adopted on December 30, 1957, and amended on November 1, 1966, May 11, 1967, December 9, 1975, November 11, 1977, May 14, 1987, February 23, 1994, and June 22, 2000, hereby restate the aforementioned AGREEMENT, as follows:

## WITNESSETH:

 **WHEREAS**, Motor Transport Labor Relations, Inc. (hereinafter referred to as "MTLR") and Locals No. 107, 470, 929, 331, 312, 384 and 676 (all of whom are affiliated with the Teamsters Joint Council No. 53 and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America) entered into a Collective Bargaining Agreement effective in its initial term from January 1, 1957 to December 31, 1959 (hereinafter referred to as "the aforesaid agreement"); and

 **WHEREAS**, the aforesaid agreement provided for the establishment of a PENSION FUND into which each employer had agreed to pay, effective March 1, 1957, stated monies for and on behalf of each of the employes covered by the aforesaid agreement for each day worked or paid for as provided for in the aforesaid agreement; and

 **WHEREAS**, other employers who were not members of MTLR, individually or as a group or as an association, had entered into labor agreements or by practices and customs were bound to comply with the terms of an agreement in which or by virtue of which they had agreed with one or more of the unions who are party to this Agreement to make contributions to the PENSION FUND on behalf of their employes so that they may be eligible to participate in the PENSION FUND; and

 **WHEREAS**, MTLR and the UNION had entered into an Agreement and Declaration of Trust made effective December 30, 1957 initially establishing the PENSION FUND; and

 **WHEREAS**, Article VIII of the Agreement and Declaration of Trust made effective as of December 30, 1957, permitted amendments to the Agreement and Declaration of Trust; and

 **WHEREAS**, the aforesaid Agreement and Declaration of Trust was amended on November 1, 1966, May 11, 1967, December 9, 1975, November 11, 1977, May 14, 1987, February 23, 1994, and June 22, 2000; and

 **WHEREAS**, MTLR, a nonprofit Pennsylvania corporation, amended and restated its Articles of Incorporation and changed its corporate name to Transport Employers Association (hereinafter "TEA") on August 22, 1978; and

 **WHEREAS**, the TRUSTEES wish to exercise their rights to amend and restate the Trust Agreement as of July 1, 2000; and

2

WHEREAS, all payments made by COVERED EMPLOYERS are to be used to provide pension and retirement benefits for eligible employes in such sums and amounts as the TRUSTEES of the PENSION FUND may determine pursuant to the provisions of PENSION PLAN which is adopted by the TRUSTEES.

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, it is agreed that the TRUST AGREEMENT be and is hereby amended and restated as follows:

## ARTICLE I
### Definitions

**Section 1.**

The term "PENSION FUND" or "TRUST FUND" or "TRUST" means THE TEAMSTERS' PENSION TRUST FUND OF PHILADELPHIA AND VICINITY. PENSION FUND shall further mean and include the corpus and earnings, appreciations, receivables or additions thereon and thereto held by the TRUSTEES for the uses, purposes and trusts set forth in this Declaration of Trust, and in any amendments which may be made to this Declaration of Trust.

**Section 2.**

The term "TEA" means TRANSPORT EMPLOYERS ASSOCIATION, a nonprofit Pennsylvania corporation (with an office presently located at 56 Main Street, Second Floor, Camillus, New York 13031) and any successor of TRANSPORT EMPLOYERS ASSOCIATION.

**Section 3.**

The term "UNION" shall, in addition to the local unions above referred to, also include such other local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America or otherwise authorized by law to represent EMPLOYES in collective bargaining matters which UNIONS may hereafter become parties to this PENSION FUND:

(i) by unanimous action of the TRUSTEES, and

(ii) upon compliance with such terms and conditions as may be imposed by the TRUSTEES at the time of their unanimous action, and

(iii) upon securing any necessary ruling or approval by any governmental agency which may be required to preserve the qualified and tax exempt status of the PENSION FUND or otherwise comply with law.

3

**Section 4.**

The term "TRUSTEES" shall mean the Employer Trustees and Union Trustees collectively as named pursuant to Article III of this Trust Agreement and as constituted from time to time in accordance with the provisions of this Agreement.

**Section 5.**

The term "PENSION PLAN" means the plan, program, method and procedure originally adopted and as amended from time to time by the TRUSTEES setting forth and pertaining, among other things, to the payment of retirement benefits to eligible employes.

**Section 6.**

The term "EMPLOYE" shall mean an individual who is in Covered Employment as defined in the PENSION PLAN at the time of reference or an individual who has been so engaged and whose Benefit Service as defined in the PENSION PLAN has not been broken at the time of reference.

**Section 7.**

The term "RETIRED EMPLOYE" shall mean an Employe who is receiving Retirement Benefits under the PENSION PLAN.

**Section 8.**

The terms "COVERED EMPLOYER" or "COVERED EMPLOYERS" shall include an association, individual, partnership or corporation, including any wholly owned subsidiary, any affiliate, any predecessor or successor as defined in the PENSION PLAN, which is obligated, or has ever been obligated to remit CONTRIBUTIONS to the PENSION FUND by reason of one or more collective bargaining agreements with the UNION. The term "COVERED EMPLOYER" shall also include the UNION, the PENSION FUND and the Teamsters Health and Welfare Fund of Philadelphia and Vicinity in its (their) capacity as an Employer with respect to its (their) full-time officers and employes.

**Section 9.**

The term "EFFECTIVE DATE" means the date on or as of which the PENSION FUND described in this Declaration of Trust was created, namely, March 1, 1957.

**Section 10.**

The terms "CONTRIBUTIONS" or "PAYMENTS" shall mean the money paid into the PENSION FUND by a COVERED EMPLOYER or contributions or withdrawal liability owed to the PENSION FUND from a COVERED EMPLOYER.

## ARTICLE II
### Name and Purpose

**Section 1.**

The PENSION FUND or TRUST FUND or TRUST is hereby established as a trust fund to be known as the "TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY."

**Section 2.**

The purpose of the PENSION FUND shall be to provide retirement benefits in accordance with the PENSION PLAN and to pay the reasonable expenses of the PENSION FUND and PENSION PLAN.

## ARTICLE III
### Number of Trustees, Designation, Removal,
### Successor Trustees, Meetings of Trustees.

**Section 1.**

The PENSION FUND and the PENSION PLAN shall be administered and operated by six (6) Trustees. The three (3) Union-designated Trustees shall be appointed as follows: one (1) Union Trustee shall be designated by the Executive Board of Local 107; one Union Trustee shall be designated by the Executive Board of Local 470; and one (1) Union Trustee shall be designated by the Executive Board of Local 929. The other three (3) Trustees shall be appointed by the TEA in accordance with its bylaws, or the successor of TEA. The three (3) Employer-designated Trustees shall represent and act for all members of TEA (or its successor) and all other COVERED EMPLOYERS.

**Section 2.**

(a)  If a Trustee chooses to resign, he must give written notice to the remaining TRUSTEES of his desire to resign as a Trustee. Such notice shall set forth the date on which the Trustee wishes his resignation to become effective; however, the effective date of the resignation shall not be less than thirty (30) days from the date on which the notice of resignation is sent to the Board of Trustees unless the remaining TRUSTEES unanimously agree to allow the effective date of the resignation to be on a date less than thirty (30) days from the date on which the notice of resignation is tendered.

(b)  In case any Union-designated Trustee shall die, become incapable of acting hereunder, resign or be removed, a successor Union-designated Trustee shall be appointed immediately by the Executive Board of the Local Union which appointed the Union-designated Trustee whose place is to be filled.

In case any Employer-designated Trustee shall die, become incapable of acting hereunder, resign or be removed, a successor Employer-designated Trustee shall be appointed immediately by the TEA.

5

(c)  In all instances in the designation of a Trustee or his successor, as well as in the case of removal of a Trustee, the written certification thereof shall be given to the TRUSTEES by the Secretary-Treasurer of the Highway Truck Drivers and Helpers Union Local No. 107 as to Union-designated Trustees and by the Secretary of TEA (or its successor) as to Employer-designated Trustees, and such written certification thereof shall be the sole acceptable evidence thereof.

**Section 3.**

It is the intention of the parties that the PENSION FUND and PENSION PLAN shall at all times be administered by an equal number of Employer-designated Trustees and Union-designated Trustees, and therefore, when required, a successor Trustee or Trustees shall forthwith be designated in the manner described in Section 2 of this Article III.

**Section 4.**

Each Trustee shall have one (1) vote.  However, if less than the total number of Employer- or Union-designated Trustees are present at a meeting of the TRUSTEES, the Employer-designated Trustee(s) or the Union-designated Trustee(s) present shall be entitled to cast the vote of his absent fellow Employer- or Union-designated Trustee, as the case may be, so that at each meeting of the Board of Trustees, from a voting standpoint, there shall be equal representation.

**Section 5.**

Any successor Employer-designated Trustee, and any successor Union-designated Trustee shall immediately upon appointment as a successor Trustee, and upon his acceptance of the trusteeship in writing, become vested with all the property, writings, powers and duties of a Trustee hereunder, and certificates as described in Section 2(c) of the appointment of the successor Trustee or Trustees shall be given in the manner described to all of the other Trustees, to any bank or banks used as a depository for the PENSION FUND, as well as to any other institution or person holding any of the property and assets of the PENSION FUND.

**Section 6.**

(a)  The Employer-designated Trustees and the Union-designated Trustees shall collectively designate one of their number to act as their Chairman.  The Chairman so designated may call a meeting of the TRUSTEES at any time by giving at least seven (7) days' written notice of the date, time and place thereof to the other Trustees.  Any two (2) of the Trustees may call a meeting of the TRUSTEES by giving at least ten (10) days' written notice of the date, time and place to the other Trustees.  Meetings of the TRUSTEES may also be held at any time without notice if all of the TRUSTEES consent thereto.  In any event, there shall be a regular meeting of the TRUSTEES at least once during each calendar quarter year.

6

(b)   If the circumstances require it, then action may be taken by the TRUSTEES without a convened meeting; provided, however, that in such case there shall be unanimous written concurrence by all of the TRUSTEES.

(c)   A quorum shall consist of at least one (1) Employer-designated Trustee and one (1) Union-designated Trustee.   When a quorum is present at any meeting, the TRUSTEES present and voting shall decide any questions and matters brought before such meeting and the majority action of the TRUSTEES present and voting, so long as a quorum is present, shall be valid and binding as the action of all the TRUSTEES; provided, however, that any and all transactions involving the investment of principal and income of the PENSION FUND and all questions of major policy in the administration of the PENSION FUND and PENSION PLAN shall be subject to unanimous approval of all of the TRUSTEES.

(d)   Any Trustee may, by Power of Attorney or other written authorization, empower the other Trustee from his group to act on his behalf and to use his name for execution or signature of any document for the purposes of these presents and of the trust hereby created, and of the PENSION PLAN, without being responsible or liable for any loss in connection therewith.

**Section 7.**

If, in the administration of the PENSION FUND and PENSION PLAN, any matter arises upon which the TRUSTEES cannot agree, the TRUSTEES shall promptly select an Impartial Arbitrator to decide the matter in dispute; if the TRUSTEES, within fifteen (15) days after the matter in dispute has arisen, are unable to agree upon the selection of the Impartial Arbitrator, any one Trustee or any group of Trustees shall file a Demand for Arbitration with the Philadelphia Regional Office of the American Arbitration Association for the appointment of an Impartial Arbitrator under and pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Association.   All costs of the arbitration shall be paid out of the funds of the PENSION FUND.

## ARTICLE IV
### Powers of Trustees

**Section 1.**

In operating and administering the PENSION FUND and PENSION PLAN, the TRUSTEES, so long as not in contravention of applicable law, shall have the power:

(a)   To establish the policy and the rules pursuant to which the PENSION FUND and PENSION PLAN are to be operated and administered;

(b)   To formulate, adopt, amend and administer a PENSION PLAN for the benefit of covered and eligible employes in order to provide retirement benefits for such employes;

7

(c)   In   connection with the administration and operation of the PENSION PLAN and in order to effectuate the purpose thereof, to formulate and establish the conditions of eligibility with respect to age and length of service; to formulate provisions for the amount and payment of benefits; to formulate all other provisions, including all details pertaining to insurance policies or annuity contracts, if any, which may be decided upon in order to carry out the intent and purpose of the establishment of this PENSION FUND and the PENSION PLAN;

(d)   To receive and collect all contributions or payments due to and payable to the PENSION FUND.  In so doing, the TRUSTEES, in their sole discretion, shall have the right to institute and maintain any and all actions and legal proceedings necessary for the collection of the contributions or payments herein provided for and required.  The TRUSTEES shall have the right to prosecute, defend, compromise, settle, abandon or adjust any actions, suits, proceedings, disputes or claims relating to the PENSION FUND;

(e)   To verify the accuracy of statements and information submitted by any COVERED EMPLOYER and by any covered and eligible EMPLOYES on contribution forms, application forms, and other forms.  In furtherance of this right and duty, the TRUSTEES may require any COVERED EMPLOYER to furnish to the TRUSTEES or to their designated representative such information, documents, records and reports as the TRUSTEES may require in the performance of their work as TRUSTEES and the COVERED EMPLOYER shall furnish such information, documents, records and reports when required to do so by the TRUSTEES;

(f)   To invest and reinvest the principal and income of the PENSION FUND and to keep the same invested without distinction between principal and income; provided, however, that investments and reinvestments may be only in accordance with the applicable law, if any, relating thereto.  If deemed advisable by the TRUSTEES, they may retain investment managers, agents or advisors, whether it be a bank or trust company or a corporation or an individual, to counsel and advise the TRUSTEES in all matters relating to investments and reinvestments.  The TRUSTEES shall have the right to reserve and keep unproductive of income such amounts of the PENSION FUND as the TRUSTEES may determine to be advisable;

(g)   To decide, if they so choose, as part of the PENSION PLAN, to purchase insurance and to retain, administer, surrender, or assign any insurance or annuity contracts thus purchased, and to pay the

8

premiums thereon and to exercise all of the rights, provisions and options in any such insurance or annuity contracts;

(h) To sell, exchange, convey, transfer or dispose of, and also grant options with respect to any property, whether real or personal, at any time held in the PENSION FUND; to make any sale by negotiated contract or by auction, and no persons dealing with the TRUSTEES shall be required to see to the application of the money or to inquire into the validity, expediency, or propriety of any such sale or other disposition of property held in the PENSION FUND; to retain, manage, operate, repair, improve, or mortgage for any period any real estate held by the TRUSTEES; to make, effectuate, and deliver any and all deeds, assignments, documents, or transfers and any other instruments that may be necessary or appropriate to carry out the powers herein granted;

(i) To cause any investment of the PENSION FUND, whether it be in the form of securities or other property, to be registered in, or to be held in the name of the TRUSTEES or the name of any of the TRUSTEES, or to retain such investment unregistered or in such forms as will permit transfer by delivery, but the books and records of the TRUSTEES shall at all times show that all such investments are part of and belong to the PENSION FUND; to vote in person or by proxy, or otherwise, on any securities held by the TRUSTEES and to exercise by attorneys or in any other manner, any of the rights of whatsoever nature pertaining to securities or any other property held by the TRUSTEES at any time; to consent to the recapitalization, consolidation, sale, merger, dissolution or readjustment of any corporation, company, or association which has issued the securities held by the PENSION FUND; to exercise any option or options, make any agreement or subscription, and pay any expense in connection with the securities held by the PENSION FUND, and to hold and retain any property acquired by means of the exercise of any of the powers herein before expressed to the extent that the TRUSTEES, in their discretion, deem advisable;

(j) To pay and provide for the payment of all reasonable and necessary expenses of collecting contributions or payments owed to the FUND by a COVERED EMPLOYER; to pay and provide for the payment of all expenses which may be incurred in connection with the establishment and operation of the PENSION FUND and the PENSION PLAN, such as expenses for the employment of administrative, legal and other expert or clerical assistance, the purchase or lease of premises to be used and occupied by the PENSION FUND, the purchase or lease of such materials, supplies, and equipment as the TRUSTEES, in their discretion, find necessary

or appropriate in the exercise of their rights and duties as TRUSTEES;

(k) To deposit all funds received by the PENSION FUND in such bank(s) or other appropriate custodial institution(s) as the TRUSTEES may designate for that purpose, provided, however, that the depository bank or banks shall be members of and insured by the Federal Deposit Insurance Corporation. The withdrawal of funds from the designated depository bank or banks shall be made only by check signed by the TRUSTEES, or such of them as they may decide, or by a person or persons authorized in writing by the TRUSTEES to sign and countersign checks;

(l) To keep true and accurate books of account and records of all of the transactions of the PENSION FUND and PENSION PLAN and to have an audit made of all books and accounts by a certified public accountant at least annually, which report, in writing, shall be sent to TEA and to the UNION and shall also be placed in the office where the business of the PENSION FUND and PENSION PLAN is transacted, there to be available for inspection by a duly authorized representative of any COVERED EMPLOYER or by any EMPLOYE;

(m) To determine from time to time whether and to what extent, and at what times and places and under what conditions and regulations, the books of the TRUSTEES shall be opened for inspection. A COVERED EMPLOYER, the UNION, or an EMPLOYE shall have the right to inspect any book or document of the TRUSTEES at reasonable times and in accordance with such conditions and regulations, if any, as may be prescribed from time to time by the TRUSTEES;

(n) To issue at least annually such financial statements or other reports as they, the TRUSTEES, may deem proper and to determine whether and how such statements shall be issued and distributed;

(o) To borrow money with or without security, on such terms as the TRUSTEES, in their discretion, may deem desirable, and to issue notes, bonds or other obligations and to pledge the property of the PENSION FUND or any part thereof, in connection with such loan;

(p) To delegate to any agent or employe engaged by them or to any one or more of the TRUSTEES themselves the privilege of performing ministerial duties for the TRUSTEES;

(q) To make, adopt, amend or repeal bylaws, rules and regulations not inconsistent with applicable law, the terms of this Declaration of

10

Trust and the PENSION PLAN as the TRUSTEES may deem necessary or desirable; to amend the PENSION FUND and PENSION PLAN, provided that the amendments comply with the purpose hereof and do not militate against the qualification of the PENSION FUND under any applicable law or regulation or deprive contributions to the PENSION FUND of their exempt status under the tax laws; and further provided that any such agreements shall be signed by the TRUSTEES as part of the records and meetings of the TRUSTEES and a copy shall be sent to TEA and the UNION;

(r)   To appoint a bank, trust or insurance company, or other financial institution as Corporate Trustees and to enter into and execute a Trust Agreement with the said Corporate Trustee, which Trust Agreement shall contain provisions for the proper management of the PENSION FUND.   Upon the execution of such Trust Agreement, the TRUSTEES may convey and transfer to the Corporate Trustee such part of the PENSION FUND as may, in the sole discretion of the TRUSTEES, be proper and advisable. Any powers granted herein to the TRUSTEES may be granted to the Corporate Trustee in such agreement, provided, however, that the funds of the PENSION FUND may be invested and reinvested only in accordance with the applicable law, if any, relating thereto.  Instead of designating a Corporate Trustee for the purpose herein above described, the TRUSTEES may, at their discretion, retain an investment manager(s), advisor(s) or agent(s), as herein before described in Article IV, Section l(f), and to delegate appropriate authority as to all matters relating to investments and reinvestments;

(s)   To construe, in their sole and exclusive discretion, the terms and provisions of this Declaration of Trust, the PENSION PLAN, and all other supplementary and amendatory documents, and the construction adopted by the TRUSTEES in good faith shall be binding upon the EMPLOYER, the UNION, the EMPLOYES, any beneficiaries, and all other persons who may be involved or affected, provided that nothing contained herein shall prevent the TRUSTEES from delegating this authority to an appropriate person or persons;

(t)   To submit the PENSION PLAN, and any amendments thereto, for approval to the United States Treasury Department so that it may be ruled to be qualified and exempt under the provisions of the Internal Revenue Code, as they exist or may be amended, thereby permitting the COVERED EMPLOYER'S contributions or payments to be deductible for tax purposes; to submit the PENSION PLAN and any amendments thereto to any other governmental agency whose approval is or may be required by law; and to make whatever changes are or may at any time be or become necessary in the PENSION

11

PLAN in order to receive and retain such qualification, exemptions and approval;

(u)   To value the PENSION FUND annually;

(v)   To perform and do any and all acts and things that may be properly incidental to the exercise of the powers, rights, duties and responsibilities of the TRUSTEES;

(w)   The Employer Trustees on the one hand and the Union Trustees on the other are empowered to retain separate legal counsel, retain a separate actuarial consultant, and a separate administration consultants.  Such services shall be paid for by the PENSION FUND.

(x)   To permit an EMPLOYER to become or remain a COVERED EMPLOYER upon terms that are actuarially sound and acceptable to the TRUSTEES;

(y)   To enter into a Reciprocal Agreement or Reciprocal Agreements with Teamsters Pension Funds in this and other areas (including provisions for partial pensions) on a prospective basis or on a retroactive basis subject to approval by the Internal Revenue Service

## ARTICLE V
### Liability of Trustees, Indemnification of
### Trustees, Reimbursement for Expenses.

**Section 1.**

(a)   Except as otherwise provided herein or by the PENSION PLAN, the TRUSTEES shall have the exclusive authority and discretion to manage and control the assets of the TRUST FUND.  They shall discharge their duties as TRUSTEES solely in the interest of the Participants and beneficiaries of the PENSION PLAN and for the exclusive purpose for providing benefits to Participants and their beneficiaries in accordance with the terms of the PENSION PLAN and for defraying reasonable expenses of administering the PENSION PLAN.  The TRUSTEES shall not be liable to any person hereunder for any action or omission if made with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity of an enterprise of a like character and with like aims; nor the action or omission of any other party that is a fiduciary with respect to the PENSION PLAN that is not in conformity with this standard, unless (i) he knowingly participates in or knowingly conceals conduct which he knows to be in breach of this standard, (ii) his own conduct has enabled another fiduciary to be in breach of this standard, or (iii) he has knowledge of such breach by another fiduciary and fails to make reasonable efforts under the circumstances to remedy such breach.

(b)  The TRUSTEES shall diversify the investments of the TRUST FUND so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so.

(c)  The TRUSTEES are expressly authorized to appoint an investment manager(s), as defined in Section 3(38) of ERISA, to manage the assets of the TRUST FUND or any part thereof.  If such investment manager(s) is/are so appointed, the TRUSTEES shall not be liable for any loss to the TRUST FUND resulting from said manager's investment of the TRUST FUND's assets to the extent permitted by law.

(d)  The TRUSTEES shall pay the insurance premiums to the Pension Benefit Guarantee Corporation as provided in Title IV of ERISA.

(e)  It is not the intent of this document to create any potential liability of the TRUSTEES beyond such liability to liabilities arising from applicable law.

**Section 2.**
The TRUSTEES shall not be liable for the proper application of any part of the PENSION FUND or for any other liability arising in connection with the administration or operation of the PENSION FUND and PENSION PLAN except as herein provided.

**Section 3.**
The TRUSTEES may from time to time consult with legal counsel for the PENSION FUND and PENSION PLAN [or separate counsel as provided in Article IV(w)] and shall be fully protected in acting and relying upon the advice of such legal counsel in the administration or application of the PENSION FUND and PENSION PLAN.

**Section 4.**
The TRUSTEES may seek protection by any act or proceeding they may deem necessary to settle their accounts; the TRUSTEES may seek a judicial determination or declaratory judgment as to any question of construction of this Declaration of Trust or as to any act thereunder.

**Section 5.**
Any Trustee may require the other TRUSTEES as well as TEA and the UNION to execute a release after an audit of the PENSION FUND by a certified public accountant discloses that all affairs are in proper order thus entitling the Trustee to a release of himself, his heirs, executors, administrators and assigns. A release executed by TEA shall be binding upon all COVERED EMPLOYERS as set forth in Article 1, Section 8 hereof, and upon their successors and assigns; a release executed by the UNION shall be binding on all members of the UNION, on all others covered by the

definition "EMPLOYE" as set forth in Article 1, Section 6 hereof, on all beneficiaries of
EMPLOYES and on the heirs, executors and administrators of each COVERED
EMPLOYER and each beneficiary of an EMPLOYE.  In the event of the death,
resignation or removal of a Trustee in the interim between the regular audits, then
following the next succeeding audit, such Trustee or TRUSTEES, or his or their heirs,
executors or administrators, in the event of death, shall be entitled to receive a release as
of the date of his or their death, resignation or removal, which release shall be executed in
the manner herein above described, provided, however that such release shall be granted
only if the next succeeding audit of the PENSION FUND by a certified public accountant
discloses that all affairs of the PENSION FUND were in proper order at the time of such
Trustee's death, resignation or removal.

**Section 6.**
　　　　　The costs and expenses of any action, suit or proceeding brought by or
against the TRUSTEES or any of them, which costs and expenses shall include counsel
fees, shall be paid from the PENSION FUND, except in relation to matters as to which it
shall be adjudged in such action, suit or proceeding that the TRUSTEES were acting in
bad faith or were grossly negligent or guilty of willful misconduct.

**Section 7.**
　　　　　The TRUSTEES shall not be bound by any notice, declaration, regulation,
advice, or request unless and until it shall have been received by the TRUSTEES at the
announced principal place of the business of the PENSION FUND located in
Philadelphia, Pennsylvania.

**Section 8.**
　　　　　No person, partnership, corporation or association dealing with the
TRUSTEES shall be obligated to see to the application of any funds or property of the
PENSION FUND or to see that the terms of the PENSION PLAN have been complied
with or be obligated to inquire into the necessity or expedience of any act of the
TRUSTEES, and every instrument effected by the TRUSTEES shall be conclusive in
favor of any person, partnership, corporate, or association relying thereon that: (a) at the
time of delivery of said instrument the TRUST was in full force and effect and (b) that
the said instrument was effected in accordance with the terms and conditions of this
Declaration of Trust; and (c) the TRUSTEES were authorized to execute such
instrument.

**Section 9.**
　　　　　Except to the extent authorized by the TRUSTEES and permitted by law, the
TRUSTEES shall receive no compensation for their services, but shall be reimbursed for
all reasonable and necessary expenses which they incur in the performance of their
duties.  Furthermore, a Trustee may be compensated if specially designated by the
Trustees to perform work of an administrative nature beyond his work as a Trustee for
the PENSION FUND and PENSION PLAN.

**Section 10.**

The TRUSTEES and all employes of the PENSION FUND and PENSION PLAN shall be bonded by a duly authorized surety company in an amount designated by the TRUSTEES or in such amount as may be required by applicable law. The cost of the premiums of such bond or bonds shall be paid from the assets of the PENSION FUND.

## ARTICLE VI
### Contributions or Payments to the Pension Fund

**Section 1.**

The contributions or payments of the COVERED EMPLOYER shall be made in the amount or amounts set forth in the Collective Bargaining Agreement or Agreements, extension or extensions, amendment or amendments thereto presently in existence or hereafter in existence by and between UNION and TEA or between one or more of the Unions who are parties to this Agreement and a COVERED EMPLOYER, or in accordance with the terms of such other written agreements between the COVERED EMPLOYER and the PENSION FUND.

**Section 2.**

The TRUSTEES may, when they deem such action practical and advisable, compel and enforce the payment of contributions in any manner which they may deem proper including any and all rights possessed by the TRUSTEES under the Employee Retirement Income Security Act of 1974, as amended, or any other applicable law.

**Section 3.**

No COVERED EMPLOYER shall have the duty or obligation to collect, receive, or pay over any of the contributions or payments required to be made and to be paid by another COVERED EMPLOYER, nor shall a COVERED EMPLOYER or the UNION be deemed guarantors or sureties in respect to any such contributions or payments from another COVERED EMPLOYER.

**Section 4.**

On demand, each COVERED EMPLOYER shall promptly furnish to the TRUSTEES or their designated representatives any and all wage or other records relating to such COVERED EMPLOYER's employes or business operations, along with the payment of the contributions or payments, and the COVERED EMPLOYER shall submit such reports as the TRUSTEES may require.

**Section 5.**

As each hour is worked and/or paid for which contributions are payable to the PENSION FUND, the payment of contributions due from the COVERED EMPLOYER to the PENSION FUND accrues and shall be considered as being as held in trust by the COVERED EMPLOYER for the benefit of the PENSION FUND to whom such trust money is due and payable.

15

**Section 6.**

The TRUSTEES or their authorized representatives shall have the right to examine and audit the pertinent books and records of any COVERED EMPLOYER. Such an examination and/or audit shall be had whenever it is deemed necessary or advisable by the TRUSTEES for the proper administration of the PENSION FUND and the PENSION PLAN. A COVERED EMPLOYER shall produce and permit examination of any record of the COVERED EMPLOYER deemed necessary by the TRUSTEES or their authorized representatives for a complete audit.

**Section 7.**

The obligation to make the contributions or payments, as well as all other obligations of the COVERED EMPLOYER, shall be binding upon the successors and assigns of each corporate COVERED EMPLOYER, and upon the heirs, executors, administrators and assigns of each unincorporated COVERED EMPLOYER.

## ARTICLE VII
### Employe's Rights

**Section 1.**

No EMPLOYE nor any person claiming by or through any EMPLOYE by reason of having been named a beneficiary in any certificate of insurance or otherwise, nor any COVERED EMPLOYER nor the UNION nor any other person, partnership, corporation or association shall have any right, title or interest in or to the PENSION FUND or any part thereof. Title to all of the money, property and income paid into, acquired by or accrued to the PENSION FUND shall be vested in and remain exclusively in the TRUSTEES of the PENSION FUND and it is the intention of the parties hereto that the PENSION FUND shall constitute an irrevocable trust and that no benefits or monies payable from the PENSION FUND shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to so anticipate, alienate, sell, transfer, assign, pledge, encumber or charge, the same shall be void. The monies to be paid into the PENSION FUND shall not constitute or be deemed monies due to the individual EMPLOYES, nor shall said monies in any manner be liable for or subject to the debts, contract, liabilities or torts of the parties entitled to such money upon a termination of the PENSION FUND and the PENSION PLAN.

## ARTICLE VIII
### Amendments

**Section 1.**

The provisions of this Declaration of Trust as well as the provisions of the PENSION PLAN, may be amended by an instrument in writing executed by the TRUSTEES; provided, however, that no amendment shall divert any of the assets of the

PENSION FUND from the purposes of this Trust and further provided that no amendment shall be made as a result of which there would not be an equal number of Employer-designated Trustees and Union-designated Trustees.  Any such amendment made in accordance with the provisions of this Article shall be binding upon the UNION, the COVERED EMPLOYERS, the EMPLOYES, beneficiaries, and all other persons who may be involved or affected.

## ARTICLE IX
### Miscellaneous

**Section 1.**
        This Declaration of Trust may be executed in one or more counterparts.  The signature of a party on any counterpart shall be sufficient evidence of his execution hereof.

**Section 2.**
        The TRUSTEES shall have the sole and exclusive power and discretion to interpret, apply and construe the provisions of this Declaration of Trust and PENSION PLAN, and any construction, interpretation and application adopted by the TRUSTEES in good faith shall be binding upon the UNION, the COVERED EMPLOYERS, the EMPLOYES, beneficiaries, and all other persons who may be involved or affected.

**Section 3.**
        In the event that any provisions of this Declaration of Trust shall be held illegal or invalid for any reason, such illegality or invalidity shall not be affect the remaining provisions of this Declaration of Trust; the provision or provisions held illegal or invalid shall be fully severable and the Declaration of Trust shall be construed and enforced as if such illegal provision or provisions had never been inserted herein.

**Section 4.**
        This PENSION FUND is accepted by the TRUSTEES in the Commonwealth of Pennsylvania, and all questions pertaining to its validity, construction, and administration shall be determined accordance with the laws of the Commonwealth of Pennsylvania insofar as such laws have not been preempted or superseded by federal law.

**Section 5.**
        It is the intention of both of the settlors of the TRUST FUND and the TRUSTEES that the PENSION FUND and PENSION PLAN at all times be established, maintained and administered to conform with the provisions of Section 302 (c) (5) of the Labor Management Relations Act of 1947, as amended, and the Employee Retirement Income Security Act of 1974, as amended.

**Section 6.**
        Wherever any words are used in this Declaration of Trust in the masculine gender, they shall be construed as though they were also used in the feminine gender in

17

all situations where they would so apply, and wherever any words are used in this Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

**Section 7.**

In the event of termination, the PENSION FUND shall be allocated in accordance with the terms of the PENSION PLAN.

**IN WITNESS WHEREOF,** the undersigned Trustees do hereby adopt this Amended and Restated Agreement and Declaration of Trust and hereunto set their hands and seals this 22nd day of June, 2000.

_____/s/ Arnold S. Rosenthal_____
ARNOLD S. ROSENTHAL, TRUSTEE

_____/s/ Paul Cardullo_____
PAUL CARDULLO, TRUSTEE

_____/s/ Kenneth F. Leedy_____
KENNETH F. LEEDY, TRUSTEE

_____/s/ Thomas Hummel_____
THOMAS HUMMEL, TRUSTEE

_____/s/ Bob Schaeffer, Jr._____
BOB SCHAEFFER, JR.

_____/s/ Frank Gillen_____
FRANK GILLEN, TRUSTEE

18

The undersigned Employer, having entered into a collective bargaining agreement with Local Union No. _____, which provides, among other things, for contributions to the Teamsters Pension Trust Fund of Philadelphia and Vicinity, agrees to be bound by the foregoing agreement and Declaration of Trust and any amendments thereto and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are selected as employer Trustees, together with their successors, selected in the manner provided in the within agreement.

Dated: _____        _____

                                    by: _____

                                    For Terminal or Terminals Located:

                                    _____

                                    _____

                                    _____

19